The STATE of Utah, Plaintiff and Respondent,

v.

Roberto TARAFA, Defendant and Appellant.

No. 20561.

Supreme Court of Utah.

June 17, 1986.

Nancy Bergeson, Curtis C. Nesset, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Sandra L. Sjogren, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant appeals from a conviction of two counts of theft by receiving, U.C.A., 1953, § 76-6-408(1) (Repl.Vol. 8B, 1978 ed., Supp.1985), both third degree felonies. U.C.A., 1953, § 76-6-412(b)(i) (Repl.Vol. 8B, 1978 ed.).

Defendant was tried on three counts of theft by receiving. It was undisputed at trial that the items received by defendant were stolen and that defendant pawned those items. Defendant, however, claimed that he received the items from one Nelson Florez and that defendant did not know or believe that the items were stolen. Defendant testified at trial that he thought he was merely helping his friend Florez because Florez did not have a Utah picture identification card, which is required to complete a pawn transaction.

The thefts that provided the items to defendant took place during 1984 on October 27 in Orem, November 3 in Provo, and November 14 in Provo. The items stolen were pawned in Salt Lake City the same day as each theft.

Prior to trial, defendant timely moved to sever the three counts and have a separate trial on each. The motion was denied.

Defendant's first point on appeal is that the trial court erred in refusing to sever the charges against him. Defendant argues that the alleged offenses did not arise out of a single criminal episode, as defined by U.C.A., 1953, § 76-1-401 (Repl.

Vol. 8B, 1978 ed.), and that the joint trial denied him due process. We agree.

The uncontroverted evidence showed that defendant did not receive the stolen property from all of the thefts at the same time. The property was stolen and defendant received and pawned it on three separate days spread over a period of eighteen days, October 27, November 3, and November 14.

This Court in *State v. Bair*[1] said that if receipt of different articles of stolen property occurred at different times and on separate and unconnected occasions, each receipt constitutes a separate offense.[2] Under this interpretation, the separate acts of receiving stolen property did not constitute a single criminal episode and should not have been tried together.

Furthermore, joinder of the three counts in a single trial was unduly prejudicial to defendant. As in *State v. Saunders*,[3] *State v. McCumber*,[4] and *State v. Gotfrey*,[5] the effect of joinder here was to permit the consideration of prejudicial evidence pertaining to charges on which the evidence would have been inadmissible in a separate trial.

For example, defendant's position on all three counts and sole defense to the charges was that he did not possess the requisite mens rea (i.e., he did not know that the items were stolen or believe that they probably were stolen), even though he admitted pawning the stolen items. However, regarding count one, which involved a stolen VCR, a police officer testified that defendant told him that defendant knew Florez had taken the VCR. This statement was the only direct evidence challenging defendant's mens rea, but pertained only to the count involving the VCR. This statement would have been inadmissible at separate trials on the other counts.

Furthermore, the prejudicial impact upon a jury listening to evidence relating to three separate charges cannot be underestimated.[6] Therefore, we cannot conclude with assurance that allowing the jury to hear damaging evidence relating to one charge but inadmissible as to the other charges did not so affect the proceeding as to deprive defendant of a fair trial.[7] Defendant's convictions are therefore reversed.

Defendant also raises several additional points on appeal. Because some of these issues are likely to arise upon retrial, we address them for the purpose of providing guidance to the trial court.[8]

██ Defendant first challenges the following jury instruction as being violative of the due process clause: "The knowledge or belief which the State must prove *is presumed* in the case of an actor who: (a) Is found in possession or control of other property stolen on a separate occasion; or (b) Has received other stolen property within the year preceeding [sic] the receiving offense charged." (Emphasis added.) Defendant argues that the above instruction embodies a mandatory presumption which relieves the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime.[9]

This instruction clearly is a mandatory presumption instruction as proscribed by *Sandstrom v. Montana*[10] and *State v.*

1. 671 P.2d 203 (Utah 1983).

2. *Id.* at 206. *See also State v. Kuhnley*, 74 Ariz. 10, 16, 242 P.2d 843, 847 (1952).

3. 699 P.2d 738 (Utah 1985).

4. 622 P.2d 353 (Utah 1980).

5. 598 P.2d 1325 (Utah 1979).

6. *See McCumber*, 622 P.2d at 356.

7. *See Gotfrey*, 598 P.2d at 1328.

8. *See, e.g., Lopes v. Lopes*, 30 Utah 2d 393, 395, 518 P.2d 687, 688 (1974).

9. *See Francis v. Franklin*, —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *State v. Chambers*, 709 P.2d 321 (Utah 1985); *State v. Walton*, 646 P.2d 689 (Utah 1982), *overruled on other grounds, State v. Roberts*, 711 P.2d 235 (Utah 1985).

10. 442 U.S. at 510, 99 S.Ct. at 2450.

*Walton* [11] and as such, standing alone, violates the due process clause. However, that does not end the inquiry. As the United States Supreme Court said in *Francis v. Franklin:*

> If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption.[12]

The State contends that the following instruction, also given in this case, cures the infirmity of the mandatory presumption instruction:

> The court has instructed you that you may presume Mr. Tarafa knew the property was stolen because he had received other stolen property within a year preceding these charges. This presumption is permissive in nature. That is, you may or may not employ it. The inference is also rebuttable. Mr. Tarafa's testimony that he had no knowledge the property was stolen is offered to rebut the inference. It is for you to determine whether this evidence is sufficient to overcome the presumption of knowledge.

**11.** 646 P.2d at 689.

**12.** 105 S.Ct. at 1971 (citation omitted).

**13.** The Court in *Francis* said: "The Court today holds that contradictory instructions as to intent—one of which imparts to the jury an unconstitutional understanding of the allocation of burdens of persuasion—create a reasonable likelihood that a juror understood the instructions in an unconstitutional manner, unless other language in the charge *explains* the infirm language sufficiently to eliminate this possibility." *Id.,* 105 S.Ct. at 1976 n. 8 (emphasis in original).

**14.** 709 P.2d at 321.

**15.** 105 S.Ct. at 1975 (footnote omitted).

**16.** The prosecutor purposely emphasized the mandatory nature of the presumption in his closing argument:

The fact that an inference may arise and is or is not rebutted by evidence of the defendant in no way changes the burden of the state. The burden remains with the state to prove beyond a reasonable doubt that Mr. Tarafa knew or believed the property was stolen.

This instruction informs the jury that the presumption is permissive and rebuttable. Thus, this instruction directly contradicts the challenged instruction.[13] As in *State v. Chambers*[14] where the challenged instruction was restated in permissive form, the additional instruction fails to cure the defect. As the Court stated in *Francis:*

> A reasonable juror could easily have resolved the contradiction in the instruction by choosing to abide by the mandatory presumption and ignore the prohibition of presumption. Nothing in these specific sentences or in the charge as a whole makes clear to the jury that one of these contradictory instructions carries more weight than the other. Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict.[15]

Furthermore, coupled with the fact that the prosecutor argued to the jury that the presumption was mandatory,[16] any reasonable

So this case then comes down to one question, I submit to you, and one question alone; and that's knowledge. Did the defendant on these three occasions have knowledge that this property, property that was presented to you, was stolen on the various dates? How do we establish that? What evidence has been presented to you to establish knowledge?

Well, first, you heard the court instruct you as to the law. *In this particular case, there is a presumption of knowledge.* This individual, Roberto Tarafa, *is presumed to have knowledge* that this property was stolen. Why is he presumed to have knowledge? That's because he was found in possession of stolen property on previous occasions, that he received stolen property on previous occasions within the preceding year; *so by law—you've taken an oath to apply the law in this case—he is presumed to have knowledge.*

**1372**

juror could have been left in a quandary as to whether to follow the so-called explanatory instruction or the immediately preceding one it contradicted.[17]

Thus, because a reasonable juror could have understood the challenged jury instruction to create a mandatory presumption that shifted to defendant the burden of persuasion on the crucial element of intent and because the explanatory instruction does not cure the error, the jury charge in this case does not comport with the requirements of due process.[18]

Defendant also contends that the prosecutor improperly argued that defendant's prior conviction for burglary demonstrated defendant's propensity to commit crime. At trial, defendant took the stand in his own defense and testified on direct examination that he had previously been convicted of burglary. During closing, the prosecutor made the following argument:

It's a criminal mind. He's a thief with a criminal mind and a criminal mind at work here....

The defendant is the kind of person, ladies and gentlemen, who would use a false credit card to obtain property for himself. He is the kind of a person who would commit a burglary, who would go into someone's home and steal their purse—as he admitted he did.

. . . .

He is the kind of person who would obtain property by fraudulent use of a credit card, and I ask you to weigh that and weigh that heavily when you examine the testimony that he gave you. He's the kind of person who would walk into somebody's home and steal their purse. He's a thief, and I'd ask you to weigh that carefully when you weigh his testimony.

Defense counsel objected to this argument, contending: "Your honor, that is an improper statement of the law. That evidence is admitted only as it goes to credibil-

ity and not as it goes to propensity to commit crime, and I think that's an improper argument." The trial judge effectively overruled this objection and later denied a motion for a mistrial based on the same ground.

Utah Rules of Evidence 404(a)(3), 608(b), and 609 provide that evidence of a witness's prior convictions may be used only to impeach the witness's credibility. Utah Rule of Evidence 404(b) states that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. The prosecutor in this case violated these rules by arguing to the jury that defendant had a propensity to commit crime.

This Court in *State v. Troy*[19] explicated a test to determine whether prosecutorial misconduct merited a reversal in a particular case. The test asks, first, whether the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict and, second, whether the jurors under the circumstances of the particular case were probably influenced by those remarks.[20]

■ In applying the first prong of the test to the present case, the prosecutor clearly, intentionally, and improperly argued that defendant's prior conviction demonstrated his criminal character. The prosecutor's remarks improperly called to the attention of the jury the criminal propensity of defendant. Under Rule 404, this was an improper use of a bad act and prior conviction and allowed jurors to consider matters they were not justified in considering in reaching their verdict.

Applying the second prong of the *Troy* test, the jurors may well have been influenced by the improper remarks of the prosecutor. The issue at trial was not whether defendant pawned the items, but whether

(Emphasis added).

17. *See* 105 S.Ct. at 1976.

18. *See id.* at 1977.

19. 688 P.2d 483 (Utah 1984).

20. *Id.* at 486.

defendant knew or believed that the items he pawned were stolen. The substantive use of defendant's prior bad acts and felonies added greatly to the likelihood that the jury inferred guilty knowledge from the character of defendant. Such use was highly prejudicial and under the circumstances of this case cannot be said to have been harmless beyond a reasonable doubt.[21]

Defendant also raises several additional points on appeal. In light of our resolution of the above issues, we need not address those points. Defendant's conviction is reversed, and the case is remanded for a new trial.

STEWART, HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

**21.** *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).